## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

—————————————————————— :
:
RUFINO D. GARCIA,                          :
:
                          Plaintiff,     :          Civil No. 15-6119-(RBK/KMW)
:
            v.                   :          **OPINION**
:
MIDLAND FUNDING, LLC,                 :
:
:
                   Defendant.     :
—————————————————————— :

**KUGLER**, United States District Judge:

This matter comes before the Court on Plaintiff Rufino D. Garcia ("Plaintiff")'s

Complaint against Defendant Midland Funding, LLC ("Midland") ("Defendant") alleging

violations of the Fair Debt Collection Practices Act ("FDCPA"). Currently before the Court is

Defendant's Motion to Compel Individual Arbitration (Doc. No. 29) and Motion to Seal (Doc.

No. 34). For the reasons stated herein, Defendant's Motion to Compel Individual Arbitration is

**DENIED**. Defendant's Motion to Seal is **GRANTED IN PART** and **DENIED IN PART**.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff brings a class action claim on behalf of himself and other similarly situated

individuals against Defendant for alleged violations of the FDCPA. Complaint ¶ 1 (Doc. No. 1).

Plaintiff alleges that Defendant filed debt-collection lawsuits against Plaintiff and other

consumers in New Jersey without having evidence or intending to acquire evidence to prove its

claims. *Id.* ¶ 2. Rather, Defendant intended to obtain default judgments or settle claims without

having to prove them. *Id.*

1

Defendant does not extend credit or sell goods/services to consumers, but rather, purchases and then attempts to collect defaulted/alleged debts. *Id.* ¶¶ 7-8. Defendant filed a Complaint against Plaintiff on or around September 11, 2014 in Camden County Superior Court seeking judgment for amounts allegedly owed on a GE Capital Retail Bank ("GECRB") (now Synchrony Bank) credit card account. *Id.* ¶¶ 10-11. Defendant claimed that Plaintiff was in default for $1,737.35 on the credit card account, which Defendant had allegedly purchased from GECRB on February 19, 2014. *Id.* ¶¶ 13-14. Plaintiff denied Defendant's allegations, asserted a number of affirmative defenses, and requested a copy of the original application for a line of credit. *Id.* ¶¶ 16-18. Plaintiff alleges that Defendant did not produce the original credit application and ultimately dismissed the collection action on the day trial was to begin. *Id.* ¶¶ 18-21. Plaintiff alleges that Defendant's practice of filing debt-collection lawsuits without the intention of proving their claims violates four provisions of the FDCPA. *Id.* ¶ 47.

Plaintiff filed this class-action suit against Defendant on August 11, 2015. *See* Compl. Defendant filed their answer with affirmative defenses and a demand for arbitration on October 16, 2015. *See* Answer (Doc. No. 6). Defendant submitted their Motion to Compel Individual Arbitration on February 19, 2016. *See* Motion to Compel (Doc. No. 19). Magistrate Judge Williams denied Defendant's First Motion to Compel on September 30, 2016. *See* Sep. 30 Order (Doc. No. 28). Defendant submitted the instant First Amended Motion to Compel Individual Arbitration on October 13, 2016. *See* Motion to Compel (Doc. No. 29). Defendant then filed the instant Motion to Seal Document Number 29-6 (Exhibit A to Mike Burger's Affidavit) on March 10, 2017. *See* Motion to Seal (Doc. No. 34).

## II. DISCUSSION AND ANALYSIS

### A. Motion to Compel Arbitration

The Federal Arbitration Act (the "Act") provides that agreements to arbitrate "in a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2012). This provision illustrates a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Moreover, Congress intended the FAA "to reverse the longstanding judicial hostility to arbitration agreements that . . . had been adopted by American Courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 23 (1991) (citations omitted). Under the Act, if one party to a valid arbitration agreement refuses to submit their claims as provided for under the agreement, the aggrieved party may seek an order in United States district court seeking to compel arbitration. 9 U.S.C. § 4. Upon determining that a binding agreement exists between the parties, the district court is obliged to direct the parties to proceed to arbitration. *Id.*

Defendant seeks an order from the Court compelling the parties to arbitrate this dispute. The parties' dispute concerns a credit card agreement, which undisputedly falls within the definition of "commerce." 9 U.S.C. § 1 (2012). Therefore, the Court's analysis is governed by the Act. Before enforcing an arbitration agreement, the Court must engage in a limited review to determine 1) whether there is a valid agreement to arbitrate, and 2) whether the specific dispute falls within the substantive scope of that agreement. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-28 (1985). The Court now turns to this analysis.

*Is there a valid arbitration agreement?*

An agreement to arbitrate is enforceable "save upon such grounds as exist at law or equity for the revocation of any contract," 9 U.S.C. § 2, or unless Congress itself has "evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Mitsubishi*, 473 U.S. at 628 (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24. "In conducting [the] limited review, the court must apply ordinary contractual principles, with a healthy regard for the strong federal policy in favor of arbitration." *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1998) (citation omitted). To reiterate, only upon a showing of "fraud, duress, mistake, or some other ground recognized by the law applicable to contracts" may the federal court find an arbitration clause to be invalid. *Seus v. John Nuveen & Co.*, 146 F.3d 175, 185 (3d Cir. 1998).

A representative from Synchrony Bank certified that a Lowe's credit card account was applied for in Plaintiff Garcia's name on December 1, 2007. Koehler Affidavit ¶ 5 (Doc. No. 29-2). The application was approved the same day. *Id.* The credit card and a copy of the effective account agreement were then sent to Garcia at 18 Meadowyck Drive, Laurel Springs, NJ 08021. *Id.* That original account agreement contained an arbitration provision which stated:

> any past, present or future legal dispute or claim of any kind, including statutory and common law claims and claims for equitable relief, that relates in any way to your account or your relationship with us . . . will be resolved by binding arbitration if either you, we or Lowe's elects to arbitrate.

Koehler Affidavit, Ex. A (Doc. No. 29-3). The account agreement in effect on February 9, 2012 contained a similar clause which states, "[i]f either you or we make a demand for arbitration, you and we must arbitrate any dispute or claim between you or any other user of your account, and us . . . if it relates to your account, except as noted below." Koehler Affidavit, Ex. B. (Doc. No. 29-4). The agreement excepted from arbitration "any individual case in small claims court . . . so

long as it remains an individual case in that court" or "a case we file to collect money you owe us." *Id.* Each agreement also gave Garcia the ability to opt out of the arbitration provision, though nothing on the record indicates that he chose to do so.

Defendant argues that the above-quoted language constitutes a valid and enforceable arbitration agreement. Def.'s Br. at 12-19 (Doc. No. 29-1). Plaintiff does not appear to contest that the arbitration agreement is valid. Rather, Plaintiff contests Defendant's ability to *enforce* the arbitration agreement. *See* Plaintiff's Response Brief in Opposition to Renewed Motion to Compel Individual Arbitration at 16-29 (Doc. No. 30). Plaintiff presents three arguments as to why Defendant may not enforce the arbitration agreement: 1) Defendant did not acquire a right to arbitrate; 2) the arbitration clause does not cover assignees; and 3) Defendant has waived any right they may have to compel arbitration. *Id.*

Defendant contends that the Forward Flow Receivables Purchase Agreement ("the Agreement") fully conveyed GECRB's ownership of Plaintiff's credit account to Defendant, which included GECRB's right to elect binding arbitration to resolve most disputes between the parties. Def.'s Br. at 18. Defendant goes on to predict that Plaintiff will argue Defendant does not fall under "we," "us," or "our" as laid out in the credit agreement and corresponding arbitration agreement. *See* Koehler Affidavit, Ex. B. Defendant notes that the credit agreement states, "GE Capital Retail Bank may be referred to as 'we,' 'us' or 'our.'" *Id.* The credit agreement also explains that "[w]e may sell, assign or transfer any or all of our rights or duties under this Agreement or your account, including our rights to payments." *Id.* Defendant argues that because the "sell, assign or transfer" language does not limit the rights GECRB may assign, it was possible for Defendant to acquire the right to compel arbitration. Def.'s Br. at 24. Defendant then explains that "GECRB assigned ***all*** rights, title and interest in and to the Account to

[Defendant]," rather than some portion of the rights. *Id.* Defendant claims that any argument that the right to enforce arbitration was not assigned would "ask this Court to read into the contract a limitation which simply does not exist." *Id.*

Plaintiff argues that the Agreement makes it clear that Defendant acquired the account receivables, not the entire credit card accounts or the account agreements. Pl.'s Br. at 17. Plaintiff quotes the "Purchase and Sale" provision of the Agreement, which states "Seller shall sell and Buyer shall buy all right (including the right to legally enforce, file suit, collect, settle or take any similar action with respect to such Receivable), title and interest in and to the Receivables with respect to which Buyer has received a Notification File." Burger Affidavit, Ex. A § 2.1 (Doc. No. 29-6). Plaintiff argues that this language means Defendant "at most acquired a 'receivable' or payment amount for Garcia, and not his entire credit card account or account agreement," rather than Defendant's contention that GECRB transferred *all* rights associated with the account to Defendant Pl.'s Br. at 18-19. Plaintiff then argues that, even if the Agreement transferred the right to arbitrate to Defendant, the agreement only did so for Defendant's right to collect the receivable and not for Plaintiff's FDCPA claim which does not contest the validity of the underlying debt. *Id.* 19-20.

Defendant replies that other courts have held that "an assignment of a receivable not only includes the entire account, but also includes the arbitration provisions, such as the one at issue here." Def.'s Reply Br. at 6 (citing *Oxford Commercial Funding, LLC v. Cargill, Inc.*, No. 00-C-4996, 2002 WL 31455989, at *8 (N.D. Ill. October 28, 2002); *GMAC Commercial Credit LLC v. Springs Indus., Inc.*, 171 F. Supp. 2d 209, 214 (S.D.N.Y. 2001)). Therefore, Defendant argues that they acquired *all* rights to Plaintiff's account.

The Court observes that Defendant's cited cases do not quite stand for the propositions that Defendant claims. The Court observes that the District Court for the Northern District of Illinois in *Oxford Commercial Funding* was noting that an assignee of accounts receivable "stands in the shoes of the assignor" insofar as the assignee is "subject to contract defenses or claims of the account debtor arising by virtue of the terms of the contract out of which the receivable was created." *Oxford Commercial Funding*, 2002 WL 31455989, at *3. The Northern District of Illinois was discussing the applicability of defenses against the assignee, rather than broadly proclaiming that the assignee of receivables acquires all rights appurtenant to the agreement. The District Court for the Southern District of New York in *GMAC Commercial Credit LLC* was similarly stating that an assignee "suing on an assigned contract is bound by that contract's arbitration clause . . . ." *GMAC Commercial Credit LLC*, 171 F. Supp. 2d at 214. The instant matter presents a different case; Defendant (the assignee) is engaged in litigation related to the original contract, but is not "suing on" said contract.

The Court finds that, even with a "healthy regard for the strong federal policy in favor of arbitration," the Agreement did not clearly convey the right to demand individual arbitration in the instant case from GECRB to Defendant. *John Hancock Mut. Life Ins. Co*, 151 F.3d at 137. The Agreement provides separate definitions for "Account" and "Receivable." "Account" refers to "any credit account owned by Seller with respect to which there is a receivable." Burger Affidavit, Ex. A § 1.1. "Receivable" refers to "any credit account receivable that is being sold to Buyer pursuant to the terms of this Agreement as such receivable exists as of the Cut-Off Date, to the extent such receivable is set forth on the applicable Notification File." *Id.* The Agreement's Purchase and Sale Clause states, "Seller shall sell and Buyer shall buy all right (including the right to legally enforce, file suit, collect, settle or take any similar action with

respect to such Receivable), title and interest in and to the Receivables with respect to which Buyer has received a Notification File." *Id.* § 2.1. As previously noted, the effective account agreement notes that GECRB may assign, transfer, or sell any or all rights associated with Plaintiff's credit account. The Agreement certainly passed the "Receivables" and associated rights from GECRB to Defendant, but the Court does not find that the Agreement transferred *all* of the rights associated with Plaintiff's account to Defendant. Defendant received rights associated with the Receivables. Defendant acquired the right to collect the receivable, the right to bring an action to collect the receivable, etc., but the Agreement does not, on its face, convey the broad right to compel arbitration for "any dispute or claim" relating to Plaintiff's Account. Koehler Affidavit, Ex. B. The right to compel arbitration for Plaintiff's FDCPA claim is not associated with legally enforcing, filing suit, collecting, settling, or a similar action with respect to the receivable. Therefore, Defendant's motion to compel arbitration will be denied. The Court need not proceed to the second portion of the FAA analysis or Plaintiff's other arguments.

**B.    Motion to Seal**

A request to seal is governed by Local Rule 5.3, which provides in pertinent part that a request to seal must be presented by motion. The motion papers must describe "(a) the nature of the materials or proceedings at issue, (b) the legitimate private or public interests which warrant the relief sought, (c) the clearly defined and serious injury that would result if the relief sought is not granted, and (d) why a less restrictive alternative to the relief sought is not available." *See* L. Civ. R. 5.3(c)(3). Rule 5.3 also provides that any order or opinion on any motion to seal "shall include findings on the factors set forth in (c)(3) . . . as well as other findings required by law . . . ." L. Civ. R. 5.3(c)(6).

It is well-established that there is a "common law public right of access to judicial proceedings and records." *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001). This is consistent with well-established precedent, based on First Amendment considerations and the common law right of access to judicial records, that documents filed with the court and judicial proceedings are open to the public. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *FTC v. Lane Labs-USA, Inc., et al.*, No. 00-3174, 2007 WL 316462, at *1 (D.N.J. Jan. 30, 2007). In order to overcome this presumption of a public right of access, the movant must demonstrate that "good cause" exists for the protection of the material at issue. *Securimetrics, Inc. v. Iridian Techs., Inc.*, No. 03-4394, 2006 WL 827889, at *2 (D.N.J. Mar. 30, 2006). Good cause exists when a party makes a particularized showing that disclosure will cause a "clearly defined and serious injury to the party seeking closure." *Id.* (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)). A Motion to Seal can be granted when the movant proves that the information is confidential in nature and that allowing the general public to access the information will cause a specific and serious injury. *Pansy*, 23 F.3d at 788. The claimed injury must be specifically stated because "'[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning,' do not support a good cause showing." *Id.* at 786 (citing *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)).

The thrust of Defendant's argument in favor of sealing Exhibit A to the Burger Declaration (Doc. No. 29-6), which also appears as Exhibit A to the Schwartz Declaration (Doc. No. 34-4), is that the Agreement is a sensitive, valuable, and proprietary asset, which the parties intended to remain confidential per Article IX of the Agreement. Def.'s Mot. Br. at 3, 7-8 (Doc. No. 34-1). Defendant cites *Bright v. Asset Acceptance, LLC* for the proposition that sealing the entire document is warranted in light of the confidentiality provision in the Agreement. 292 F.R.D.

190, 203 (D.N.J. 2013). The Court notes that, unlike the instant motion, the motion to seal in *Bright* was uncontested and accompanied by a discovery confidentiality order. *See Bright*, 292 F.R.D. at 203 n.1.

Plaintiff opposes Defendant's motion only to the extent that Defendant seeks to seal certain portions of the Agreement which have been cited and/or quoted in publicly filed documents. Pl.'s Opp'n Br. at 1-2 (Doc. No. 37). Plaintiff specifically opposes sealing the Agreement's first introductory paragraph, paragraphs A-B of the "RECITALS" section, the definitions for the terms "Account," "Account Document," and "Receivable," § 2.1 of Article II, and §§ 4.1(d), (i), and (j) of Article IV. *Id.* at 2. Plaintiff does not oppose sealing any other provisions. *Id.* Plaintiff's counsel has identified instances of each of these portions of the Agreement appearing in publicly filed documents. *See* Quirk Certification, Ex. A (Doc. No. 37-1).

The Court finds that Defendant has adequately demonstrated the specific harm that would occur if the entire confidential document was made public. However, Defendant cannot demonstrate any harm that would come from producing a redacted version of the Agreement featuring only the portions of the Agreement that have already been made public in briefs and other exhibits. Therefore, Defendant's motion to seal is granted in part and denied in part. The Court will order that Documents 29-6 and 34-4 be sealed. The Court directs Defendant to publicly file a redacted version of the Agreement featuring: the Introductory Paragraph; Recitals Paragraphs A and B; the definitions for the terms "Account," "Account Document," and "Receivable"; Section 2.1 of Article II; and Sections 4.1(d), (i), and (j) of Article IV.

**III. CONCLUSION**

For the reasons expressed above, Defendant's Motion to Compel Individual Arbitration is

**DENIED**. Defendant's Motion to Seal is **GRANTED IN PART** and **DENIED IN PART**.


Dated:  05/05/2017                                            s/ Robert B. Kugler
                                                             ROBERT B. KUGLER
                                                             United State District Judge